IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DISTRICT

**PATRICIA COOK**                                                                                    **PLAINTIFF**

v.                                    Case No. 4:12-cv-00249-KGB

**TRIPLE TRANSPORT, INC.**                                                        **DEFENDANT**

## OPINION AND ORDER

Plaintiff Patricia Cook brings this action against defendant Triple Transport, Inc. ("Triple Transport") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. Triple Transport moves for summary judgment (Dkt. No. 11). Ms. Cook has responded (Dkt. No. 17), and Triple Transport has replied (Dkt. No. 21). Triple Transport also moves to strike as untimely Ms. Cook's response to the motion for summary judgment (Dkt. No. 18). Ms. Cook has responded (Dkt. No. 20), and Triple Transport has replied (Dkt. No. 22). For the following reasons, Triple Transport's motion to strike and motion for summary judgment are denied.

### MOTION TO STRIKE

The Court will address first Triple Transport's motion to strike Ms. Cook's response to the motion for summary judgment (Dkt. No. 18). Triple Transport contends that Ms. Cook's response was untimely filed and, therefore, the Court should refuse to accept the filings and strike from the record all filings in support of the response. Triple Transport acknowledges that Ms. Cook's response was filed "three days after the time it was due" (Dkt. No. 19, at 3). Triple Transport also acknowledges that Ms. Cook may make an affirmative showing of excusable neglect regarding her untimely filing, citing *Huggins v. Fed Ex Ground Package Sys.*, 592 F.3d 853, 856 (8th Cir. 2010) (Dkt. No. 19, at 3).

In response to the motion to strike, Ms. Cook states that her counsel mistakenly calculated the due date for filing the response by referring to the Federal Rules of Civil Procedure, without consulting the Local Rules of the Court regarding the reduction of time for responding to a motion for summary judgment (Dkt. No. 20, at 1).

For the purposes of Rule 60(b)(1) of the Federal Rules of Civil Procedure, "[e]xcusable neglect means good faith and some reasonable basis for noncompliance with the rules." *United States v. Puig*, 419 F.3d 700, 702 (8th Cir. 2005) (quoting *Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir. 1997)). The Eighth Circuit has described excusable neglect as "an elastic concept that empowers courts to provide relief where a party's failure to meet a deadline is caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Kurka v. Iowa Cnty.*, 628 F.3d 953, 959 (8th Cir. 2010) (internal quotation marks omitted) (quoting *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (reviewing excusable neglect under Fed. R. Civ. P. 6)). "The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.*

In determining whether excusable neglect exists, the Eighth Circuit has looked to the following "particularly important" factors: "(1) the possibility of prejudice to the defendant, (2) the length of delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007)).

Applying the *Kurka* factors here, the Court finds excusable neglect. The delay was three days. Ms. Cook's counsel has provided a reasonable explanation for the delay, and there has been no showing of a lack of good faith on the part of Ms. Cook. There also has been no showing of prejudice. The Court will consider Ms. Cook's response and deny Triple Transport's motion to strike (Dkt. No. 18).

**MOTION FOR SUMMARY JUDGMENT**

Ms. Cook is a truck driver who has worked in the industry for some time. She applied for a position with Triple Transport but was not hired. She claims she was discriminated against on the basis of her gender. Triple Transport moves for summary judgment on her claims.

**I.   Factual Background**[1]

Ms. Cook worked as a truck driver for Integrity from approximately August 2009 until August 2010. She was initially interviewed for the position at Integrity by manager George White. Jonathan Kifer was also a manager at Integrity during Ms. Cook's employment there. Ms. Cook reported to Mr. Kifer and Mr. White. Mr. Kifer approved the hire of every Arkansas driver while employed at Integrity. Mr. White did not have the authority to hire without Mr. Kifer's approval. Mr. Kifer approved Ms. Cook's hire at Integrity.

Ms. Cook was involved in two truck accidents while working at Integrity. In the first accident her trailer hit the hood of a Peterbilt tuck, and in the second accident, her truck damaged a gate. Ms. Cook resigned from her position at Integrity because she was romantically involved with a dispatcher, Charles Allshouse.

---

[1] The undisputed facts are taken from Triple's Statement of Undisputed Facts (Dkt. No. 13) and plaintiff's Response to Statement of Undisputed Facts (Dkt. No. 15), unless otherwise noted by specific citation.

On May 24, 2011, Ms. Cook applied for a position at Triple Transport's Quitman location. At that time, she was employed as a driver for JEG. Ms. Cook submitted her application to Randy Thomas, a yard manager for Triple Transport at the Quitman location. Mr. Thomas reported to Mr. Kifer, the same Mr. Kifer with whom Ms. Cook worked at Integrity. Mr. Kifer told Mr. Thomas to put Ms. Cook's application on his desk and that he would review it when he returned.

During a discussion regarding Ms. Cook's application, Mr. Thomas suggested to Mr. Kifer that her performance at Integrity would be a concern because she was engaged in a romantic relationship with her supervisor and that conduct could cause disruption in the work place. Triple Transport claims in its motion for summary judgment that Mr. Kifer told Mr. Thomas Ms. Cook's personal conduct at Integrity should not be considered. Ms. Cook contends that Mr. Thomas advised her that she would start the day she took her drug test and that he would fax her application to the lady in Judsonia (Dkt. No. 11-2, at 4-5). That same week, Ms. Cook called Mr. Thomas regarding her application, and he informed her that Mr. Kifer wanted to speak with her.

On May 26 or 27, 2011, Mr. Kifer spoke on the phone with Ms. Cook. He informed her that all applications must be processed by Human Resources in Judsonia, Arkansas, and that the woman who processed the applications was on vacation. Ms. Cook continued to text Mr. Kifer about the driver position 21 times, sometimes hourly. Although Ms. Cook was shown text messages during her deposition, she contends that there are some missing texts; she does not think the texts "read right" (Dkt. No. 11-2, at 8). Mr. Kifer talked on the phone with Ms. Cook twice between May 23, 2011 and June 6, 2011.

4

Elizabeth Peckham, who worked in Human Resources/Safety for Triple Transport, provides administrative support for the driver hiring process, including running motor vehicle record checks, coordinating candidate drug tests, and verifying employment records.  Ms. Peckham was on vacation from May 30, 2011 to June 6, 2011.  On the morning of June 7, 2011, Ms. Cook called Ms. Peckham to ask about the processing of her application.  The parties dispute the nature of the call.  Ms. Peckham believes Ms. Cook "angrily demanded" to know why she had not processed her application.  Ms. Peckham claims she attempted to explain that she had just returned from vacation.  She contends Ms. Cook proceeded repeatedly to demand to know why Ms. Peckham had not "run [her] stuff."  Ms. Peckham contends she was upset by Ms. Cook's phone call and reported it to Mr. Rodney Krug.  The record is not clear as to Mr. Krug's position with Triple Transport, but it does establish that he was in management and raises at least a disputed issue of material fact as to his involvement in the consideration of Ms. Cook's job application.  Mr. Krug testified that he believed that Ms. Cook's behavior was "belligerent" and that Ms. Cook "became all unglued on Elizabeth."  Mr. Krug also claims that no other applicant had spoken to Ms. Peckham in this manner, although Ms. Cook disputes this claim.

Ms. Cook also disputes that she spoke to Ms. Peckham in the manner Triple Transport claims.  She denies raising her voice with Ms. Peckham (Dkt. No. 11-2, at 22).  She also disputes the substance of the call.  Ms. Cook alleges that Ms. Peckham did not have her application and that she told Ms. Cook she only received the applications of drivers Triple Transport intended to hire (Dkt.No. 17-1, at 20).  Ms. Cook claims she made a comment about Triple Transport not hiring women drivers, and Ms. Peckham said in response that maybe the policy had changed (Dkt. No. 17-1, at 20).  According to Ms. Cook, Ms. Peckham advised Ms. Cook to contact Mr. Kifer or Mr. Thomas.

Triple Transport maintains that, following this phone call, Mr. Kifer and Mr. Krug discussed Ms. Cook's alleged outburst during her call with Ms. Peckham. According to Triple Transport in its moving papers, Triple Transport decided not to hire Ms. Cook based on her behavior during that call. Triple Transport now claims that Mr. Kifer knew that Ms. Cook had caused two wrecks at Integrity, but he continued to believe she was a good hire until she upset Ms. Peckham during the hiring process. Mr. Krug believed that Ms. Cook's behavior during the application process was an indication of how she would behave as an employee, and her conduct was not acceptable, according to Triple Transport.

Ms. Cook was the only female driver at Future Energies, Marable, and Lindsey Hauling and was the only female driver for most of her employment at JEG, Paladino, and Night Hawk.

Mr. Thomas was fired from Triple Transport for submitting false meal receipts. Mr. Thomas provided to Ms. Cook an affidavit which states:

> I worked as yard manager at the Quitman location of Triple Transport, Inc., for approximately six months in 2011.
>
> On or about May 24, 2011, Patricia Cook spoke with me about working as a truck driver at Triple Transport and filled out an application. I gave her application to Jonathan Kifer, the general manager of Triple Transport.
>
> At the next manager meeting, Mr. Kifer, Mr. Rod Krug and I discussed Ms. Cook's application. Mr. Kifer attempted to talk Mr. Krug into hiring Ms. Cook as he had worked with her previously at Integrity. I also worked with Mr. Kifer and Ms. Cook at Integrity. Mr. Krug stated that he would not "hire women or n----s."
>
> Ms. Cook attempted to contact Mr. Kifer and me over the next couple of weeks to inquire about her application. Mr. Kifer did not respond and I didn't know what to tell her so I just told her she had to talk to Jonathan.

Triple Transport submitted this affidavit with its motion for summary judgment (Dkt. No. 11-9). Triple Transport repeatedly takes the position in its moving papers that the "affidavit does not state when this alleged statement occurred." Mr. Krug admits that, at some point in time, he may

have made a comment out of anger that is similar to the comment quoted by Mr. Thomas, but he claims the comment was probably made "a long time ago" and was not made in connection to Ms. Cook's application or the decision not to hire her.

## II.   Standard of Review

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

## III.   Analysis

Ms. Cook can establish a *prima facie* claim of gender discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged

decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043-44 (8th Cir. 2011). Therefore, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. *Id.* A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, irrespective of whether his strong evidence is circumstantial. *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, [s]he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

      **A.**    **Direct-Evidence Analysis**

A remark by a decisionmaker, in order to be direct evidence of sex discrimination, must show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action. *Torgerson*, 643 F.3d at 1045-46 (citing *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860–61 (8th Cir. 2009); *cf. Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1213–14 (8th Cir. 2001) (school board president's statements that "a woman can't handle [the administrator's] job" and that the employee was "a woman in a man's job" are direct evidence of sex discrimination); *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1318, 1324 (8th Cir. 1994) (supervisor's comment that "women in sales were the worst thing" to happen to the company is direct evidence of sex discrimination)).

Triple Transport alleges that Mr. Krug's statement as described in Mr. Thomas's affidavit was not made in reference to Ms. Cook or her application for employment, that the affidavit by

8

Mr. Thomas is silent as to the timing of Mr. Krug's statement, and that Mr. Krug has stated under oath that if he had made a similar comment, it "would have been a long time ago." However, Mr. Krug did acknowledge that he "probably" made that statement in his past. Triple Transport argues that, even if Mr. Krug made statements regarding female applicants at the time surrounding Ms. Cook's application and even if he had made these statements in reference to Ms. Cook, Triple Transport still considered Ms. Cook's application.

Triple Transport relies solely on *Con-Way Freight* in its analysis of direct evidence and as support for its argument that this Court should grant summary judgment. *E.E.O.C. v. Con-Way Freight, Inc.*, 622 F.3d 933 (8th Cir. 2010). In *Con-Way Freight*, plaintiff brought suit against defendant for race discrimination. Roberta Hollins, an African-American female, applied for a job at Con-Way Freight. She met with the service center manager, Kenneth Gaffney. Mr. Gaffney told Kevin Beer, the vice-president of operations, about Ms. Hollins, stating she was the ideal candidate. Mr. Beer, upon learning of Ms. Gaffney's race, told Mr. Gaffney that he would be "opening a can of warms" by hiring her and he "probably [didn't] want to go that route." The district court granted summary judgment in favor of Con-way Freight. Ms. Hollins argued unpersuasively that, but for Mr. Beer's comment, Mr. Gaffney would have moved forward to hire Ms. Hollins. In response to that argument, the court determined that plaintiff ignored the "fact that Mr. Gaffney did not have authority to hire Ms. Hollins (or anyone else) without first obtaining the personnel department's approval following a background check." *Id.* at 936.

That argument is different from the one advanced by Ms. Cook. This Court concludes *Con-Way Freight* is distinguishable from this case. The affidavit from Mr. Thomas which Triple Transport attaches to its moving papers states that, at the next managers' meeting after Ms. Cook applied for the job, Mr. Thomas, Mr. Kifer, and Mr. Krug discussed Ms. Cook's application.

9

Mr. Thomas states that Mr. Kifer attempted to talk Mr. Krug into hiring Ms. Cook, as he had previously worked with her at Integrity. According to Mr. Thomas, Mr. Krug stated he does not "hire women or n-----s." This is a different comment from the one alleged in *Con-Way Freight*.

Even though Triple Transport argues that the affidavit does not state when this alleged statement occurred, from the face of Mr. Thomas's affidavit, a reasonable fact finder could determine that Mr. Krug allegedly made those remarks during the managers' meeting at which Ms. Cook's application was discussed, and thereafter, she was not hired. The Court acknowledges there may be motivations behind the statement, given that Mr. Thomas was terminated from Triple Transport and given what Mr. Krug has testified to about the statement. "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *See Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir.2003).

Ms. Cook alleges that Mr. Krug had the authority to hire her. Triple Transport argues that Ms. Cook has not presented evidence demonstrating the extent of Mr. Krug's role in making a hiring decision or influencing another manager's decision in determining whether to hire Ms. Cook, but this is unpersuasive. Even under Triple Transport's version of events, Mr. Krug participated in the hiring decision (Dkt. No. 11-8, at 1). The facts alleged here are different from the facts alleged in *Con-Way Freight*. For these reasons, this Court concludes *Con-Way Freight* does not control.

The Court finds that these alleged statements by Mr. Krug, as set forth in Mr. Thomas's affidavit, when viewed in the light most favorable to Ms. Cook constitute a strong causal link between the adverse employment decision and impermissible discriminatory motives. *Torgerson*, 643 F.3d at 1044. There are factual issues in dispute that should be resolved by a

jury. Even if the Court were to find that Ms. Cook failed to present direct evidence of discrimination, her claim would still proceed to trial based upon this Court's *McDonnell Douglas* analysis.

### B. *McDonnell Douglas* Analysis

To establish a *prima facie* case of gender discrimination, a plaintiff must show that she: "(1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination." *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 460-61 (8th Cir. 2010). If a plaintiff makes out a *prima facie* case, she "creates a presumption of unlawful discrimination, rebuttable through the showing of a legitimate nondiscriminatory reason for the action." *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011). Finally, a plaintiff "may still demonstrate the employer's proffered reason was pretextual and unlawful discrimination was a motivating factor in the adverse employment decision." *Id.*

The parties disagree whether Ms. Cook can establish a *prima facie* case of gender discrimination. For purposes of its motion for summary judgment, Triple Transport acknowledges that Ms. Cook is a female and that her application for employment was denied. Triple Transport affirmatively states that other candidates to which it extended offers of employment were qualified for the job and that none displayed behavior similar to that of Ms. Cook during the application process. Further, Triple Transport states that the nature of the industry in which it conducts business historically has a high ratio of male drivers to female drivers. Triple Transport hired a male to fill the open position. Triple Transport does not dispute that Ms. Cook satisfies the first, third, and fourth elements of her *prima facie* case. The key issue is whether Ms. Cook has presented evidence sufficient to create a genuine issue of material fact

as to the second element: that is, whether she was qualified for the position. This Court concludes that she has.

### 1. Qualified for the Position

Triple Transport contends that Ms. Cook cannot establish a *prima facie* case because she was not qualified for the position. At the *prima facie* stage of a sex discrimination case, the employee must demonstrate objective qualifications. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046-47 (8th Cir. 2005); *Legrand v. Trustees of University of Arkansas at Pine Bluff*, 821 F.2d 478, 481 (8th Cir. 1987). The qualification necessary to shift the burden to the defendant for an explanation of the adverse job action is minimal; plaintiff must show only that she possesses the basic skills necessary for performance of the job. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011).

Triple Transport challenges Ms. Cook on this point in part by claiming that it is unknown whether Ms. Cook was objectively qualified for the position, given that she would have to pass a motor vehicle record check, a drug test, and a verification of employment records. To establish she was qualified, Ms. Cook offers a statement by Mr. Kifer, a manager employed by Triple Transport, that she "is probably one of the best drivers that [he's] ever had." Furthermore, Triple Transport acknowledges that Ms. Cook was the only female driver at Future Energies, Marable, and Lindsey Hauling and the only female driver for most of her employment at JEG, Paladino, and Night Hawk. The record includes testimony from Ms. Cook that, when she spoke to Mr. Thomas, he indicated she would be able to start as soon as she took her drug test. There also is some evidence in the record that a driver involved in a roll-over accident was hired by Triple Transport. Viewing the evidence in the light most favorable to Ms. Cook, the Court concludes that she has established she was qualified for the position. *Togerson*, at 1047 ("The burden of

establishing a *prima facie* case of disparate treatment is not onerous."). Therefore, the Court finds that Ms. Cook has established her *prima facie* case of discrimination.

## 2. Legitimate, Nondiscriminatory Reason

Because the Court finds that Ms. Cook has established a *prima facie* case of discrimination, next the burden shifts to Triple Transport to show that there was a legitimate, nondiscriminatory reason for denying employment. "This burden is not onerous." *Bone*, 686 F.3d at 954. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Id.* at 955 (internal quotation omitted). Triple Transport need only proffer a good-faith reason for its action. *Id.* Once the employer provides this reason, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005), abrogated on other grounds by *Torgerson*, 643 F.3d 1031.

Triple Transport has offered several reasons for not hiring Ms. Cook. On September 9, 2011, Triple Transport cited Ms. Cook's conduct at her previous employer as potentially creating a problem in the workplace and cited her impatience and hostility during the application process. On October 9, 2012, Triple Transport stated that she was not hired due to her unprofessional decorum during the application process and her driving issues. Most recently, Triple Transport in its motion for summary judgment states that her behavior created a legitimate nondiscriminatory basis for declining to hire Ms. Cook or for continuing any further process in consideration for employment. Specifically, Triple Transport states that Ms. Cook's behavior substantially interfered with Triple Transport's workplace process and Ms. Peckham's ability to perform her own job.

The Court determines Triple Transport has articulated a legitimate, nondiscriminatory reason not to hire Ms. Cook. Therefore, "the presumption of discrimination disappears," and the burden of persuasion shifts back to Ms. Cook "to prove that the proffered justification is merely a pretext for discrimination." *Id.*

### 3. Pretext

The burden shifts to Ms. Cook to show that Triple Transport's proffered reason was pretextual, and that Triple Transport did not hire her as a result of gender discrimination. The Eighth Circuit has explained that "[t]here are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 at 1047. First, "[a] plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.*

A substantial change in an employer's legitimate, nondiscriminatory reason for firing an employee may be probative of pretext, but the Eighth Circuit has been clear that these discrepancies must actually be substantial. *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006). Where employers give "two completely different explanations for their decisions to terminate their employees," such a substantial change is established. *Id.* (citing *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1027–28 (8th Cir. 1994), and *E.E.O.C. v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir. 1994)). However, where the employer "has not wavered from its one explanation for terminating" the employee, there is no substantial change. *Trans States Airlines, Inc.*, 462 F.3d at 995.

As explained, Triple Transport has offered several reasons over time for not hiring Ms. Cook. There are disputed issues of material fact surrounding the reasons Triple Transport

offered in the past and the reasons it offers now for not hiring Ms. Cook. Although this Court is not entirely convinced that there was a "substantial change" in the reasons given by Triple Transport over time, the Court acknowledges the reasons did change and that the factual disputes surrounding the reasons may lead a reasonable fact finder to conclude that the employer's explanation is unworthy of credence.

Moreover, and more importantly, Mr. Thomas's affidavit creates a genuine issue of material fact regarding whether a prohibited reason more likely motivated Triple Transport not to hire Ms. Cook. There also is some evidence in the record that another employee of Triple Transport informed Ms. Cook that the owner would not hire women drivers because he did not want to worry about them out at night on location by themselves, that Ms. Cook raised this issue with Ms. Peckham during their conversation, and that Ms. Peckham did not deny this when confronted with it but instead responded that "maybe the policy has changed" (Dkt. No. 17-2, at 20). A reasonable jury could find this evidence demonstrates pretext for discrimination. When viewed in the light most favorable to Ms. Cook, there are genuine issues of material fact in dispute as to whether a prohibited reason more likely motivated Triple Transport not to hire her. The Court concludes these factual disputes must be resolved by a jury.

\*\*\*

For these reasons, Triple Transport's motion to strike (Dkt. No. 18) and motion for summary judgment (Dkt. No. 11) are denied.

IT IS SO ORDERED this 1st day of March, 2013.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE